**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PEGGY CUZICK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:10CV928MLM** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of

Michael J. Astrue ("Defendant") denying the application for Disability Insurance Benefits under Title

II of the Social Security Act filed by Peggy Cuzick ("Plaintiff"). Plaintiff has filed a brief in support

of the Complaint. Doc. 13. Defendant has filed a brief in support of the Answer. Doc. 16. The parties

consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28

U.S.C. § 636(c)(1). Doc. 7.

## I.
## PROCEDURAL HISTORY

On January 25, 2007, Plaintiff filed an application for disability insurance benefits, alleging

an onset date of May 5, 2006. Tr. 165-67, 189. Her claim was denied and she requested a hearing

before an Administrative Law Judge ("ALJ"). Tr. 99. Following a hearing, by decision dated

December 5, 2008, the ALJ found that Plaintiff was not disabled. Tr. 76-86. On June 8, 2009, the

Appeals Council granted Plaintiff's Request for Review and remanded the matter to the ALJ. Tr. 88-

90. After a supplemental hearing before a different ALJ, the ALJ found, on January 29, 2010, that

Plaintiff was not disabled. Tr. 7-24. Plaintiff filed a Request for Review with the Appeals Council.

Tr. 5-6. On April 9, 2010, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. As such, the decision of the second ALJ stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996))).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); part 404, subpart P, appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a

reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell

4

v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).  Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments.  20 C.F.R. § 404.1545(b)-(e).  The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy.  Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)).  The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work.  Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.  The Commissioner has to prove this by substantial evidence.  Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983).  Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities.  Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used.  An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible.  Goff, 421 F.3d at 794 ("[T]he ALJ properly

included only those limitations supported by the record as a whole in the hypothetical."); Rautio v. Bowen, 862 F.2d 176, 180 (8th Cir. 1988).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff alleges that she is disabled due to aortic insufficiency and mitral regurgitation. Plaintiff was fifty-five on her alleged onset date, May 5, 2006. She testified, at the hearing, that she finished high school and attended community college without receiving a degree or a certification; that she had fatigue every day; that she had problems with wheezing, going up and down stairs, and squatting; and that she needed to take naps during the day. In his January 29, 2010 Decision, the ALJ[1] found that Plaintiff had not engaged in substantial gainful activity since May 5, 2006; that she had the severe impairments of aortic insufficiency and mild to trace mitral regurgitation[2]; that Plaintiff did not have an impairment or combination of impairments which meet or medically equal a listed impairment; that Plaintiff had the RFC to perform the full range of sedentary work as defined by the Regulations[3]; that

---

[1]    All references to the ALJ are to the second ALJ, unless otherwise stated.

[2]    In her application Plaintiff alleged that she was disabled due to multiple other conditions. Tr. 189. The ALJ found that the only severe impairments Plaintiff had were aortic insufficiency and mitral regurgitation. She does not take issue with the ALJ's findings in this regard.

[3]    20 C.F.R. § 404.1567(a) defines sedentary work as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs

Plaintiff was capable of performing her past relevant work as an office manager; and that, therefore, Plaintiff was not disabled through the date of the decision.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ's decision is contrary to the Order of the Appeals Council which required the ALJ to determine whether Plaintiff had transferrable skills; because the ALJ incorrectly classified the strength requirements of her past relevant work; and because the ALJ "failed to consider the various factors set for in 20 C.F.R. § 404.1527(d) in evaluating the opinion of the treating doctor." Doc. 13 at 9.

## A.    The Opinion of a Treating Doctor:

Plaintiff does not specify the doctor whose opinion the ALJ did not properly consider.  Plaintiff merely quotes 20 C.F.R. § 404.1527(d) without any discussion whatsoever.  As suggested by

---

are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Indeed, SSR 85-15, 1985 WL 56857, at *5, states that "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. ... If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." The sitting requirement for the full range of sedentary work "allows for normal breaks, including lunch, at two hour intervals." Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) (citing SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996)).  Additionally the range of sedentary jobs requires a claimant "to be able to walk or stand for approximately two hours out of an eight-hour day. The need to alternate between sitting and standing more frequently than every two hours could significantly erode the occupational base for a full range of unskilled sedentary work." Id. at 997 (citing 1996 WL 374185 at *7).  Moreover, SSR 96-9p requires that "the RFC assessment should include the frequency with which an applicant needs to alternate between sitting and standing, and if the need exists, that vocational expert testimony may be more appropriate than the grids." Id.  It also states that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of disabled."

Defendant, the court will assume that Vinay Kamat, M.D., is the doctor whom Plaintiff references as Dr. Kamat completed forms, on August 8, 2007, indicating that Plaintiff had limitations which would preclude her performing sedentary work. In this regard, Dr. Kamat checked boxes indicating that Plaintiff needed to change positions "every few minutes"; that Plaintiff could sit and stand for less than one hour in a work day; and that her pain would "often" interfere with her attention and concentration. Tr. 287-89.

The opinions and findings of a plaintiff's treating physician are entitled to "controlling weight" if that opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). Indeed, if the opinions of treating doctors are not controverted by substantial medical or other evidence, they are binding. Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000) (citing Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir.1998)).

First, "the longer a treating source has treated [a claimant] and the more times [the claimant has] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion." 20 C.F.R. §§ 404.1527(d)(2)(i) & 416.927(d)(2)(i). See also Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004) (holding that a doctor's opinion stated in a checklist should not have been given controlling weight because the doctor had met with the plaintiff only three times at the time he completed the form). Dr. Kamat first saw Plaintiff in April 2005, which date is prior to her alleged onset date. He treated Plaintiff from April 2005 until April 10, 2006, for abdominal symptoms and shingles. Tr. 340-46. Records reflect that, after Dr. Kamat saw Plaintiff in April 2006,

he did not see Plaintiff again until April 3, 2007.[4] Thus, in August 2007, when Dr. Kamat completed the form on which he opined that Plaintiff could sit and stand only one hour, he had only seen Plaintiff once since April 2006.

Second, a treating physician's checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence. Stormo, 377 F.3d at 805-06; Hogan 239 F.3d at 961; Social Security Ruling 96-2p, (July 2, 1996).

Third, "[a]lthough a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." Hogan, 239 F.3d at 961. "'It is the ALJ's function to resolve conflicts among the various treating and examining physicians.'" Tindell v. Barnhart, 444 F.3d 1002, 1004 (8th Cir. 2006) (quoting Vandenboom v. Barnhart, 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted). Despite Dr. Kamat's opinion, Sundep Das, M.D., who was Plaintiff's *treating cardiologist*, reported, on December 6, 2005, that Plaintiff could "walk at a flat level without any problems, but she [did] get short of breath on going up a flight of stairs"; that Plaintiff was in no apparent distress; that her blood pressure was 136/87 and 119/82[5]; that her pulse was regular; that her oxygen saturation was 99%; that Plaintiff reported that her shortness of breath had improved; that Plaintiff had normal gait; that she had *moderate coronary artery disease*; that Plaintiff's recent stress test was "very equivocal"; that the doctor was "*hold[ing] off on a cardiac catheterization at [that] time because [Plaintiff's] symptoms appear[ed] to have stabilized*, at least

---

[4] It is not clear if doctor Kamat saw and/or examined Plaintiff on the date he completed the forms, August 8, 2007.

[5] See Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992) (holding that a high blood pressure reading of 170/90 indicates only moderate hypertension); Brown v. Heckler, 767 F.2d 451, 453 (8th Cir. 1985) (holding that blood pressure which measures within the range of 140-180/90-115 is considered mild or moderate, and that hypertension does not qualify as severe where it does not result in damage to the heart, eye, brain or kidney) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1, 4.00 C).

not worsened"; that Plaintiff's chest pain might be reflux, for which he gave her medicine; that her hyperlipedemia was well controlled with Crestor; and that she had "*moderate aortic insufficiency* and *moderate mitral regurgitation* with *normal LV function.*"

Fedwa Khalifa, M.D., examined Plaintiff on April 13, 2007, and reported that, upon physical examination, Plaintiff's *blood pressure was 100/70*; that she was not in acute distress; that she had *normal* heart sounds, with a *soft systolic murmur and no rub or gallop*; that, in her back, she had no muscle spasms or tenderness; that she had no swelling, edema, cyanosis, tenderness, deformity, or muscle wasting in her extremities; that, "[i]n general there [was] *no limitation of any joint movements*"; that she walked with a normal pace; that she could walk on her heel or ankle; that her cranial nerves were grossly intact; that her muscle power was 5/5 in the upper and lower extremities; that the right foot power was decreased; that reflexes were "2+" in all extremities; and that she had no muscle atrophy. Dr. Khalifa stated that his clinical impression was that, although Plaintiff was diagnosed with aortic and mitral disease in 2001, clinical examination showed that she did not have shortness of breath; and that examination of Plaintiff's heart showed regular rate and rhythm, with a soft systolic murmur. Dr. Khalifa further stated that his clinical impression was that, although Plaintiff had pain in her legs and knees, examination of her lower extremities was within normal limits; that, although Plaintiff felt sad and anxious, she had not seen a physician and did not take any medications for these symptoms; and that, although she had difficulty sleeping for one year, she did not take any medications. Tr. 364-67.

Robert Baird, M.D., reported, on February 7, 2008, that Plaintiff's blood pressure was 130/80[6]; that Plaintiff's chest and lung exam showed "*normal breath* sounds"; that Plaintiff's

---

[6]     See Brown v. Heckler, 767 F.2d 451, 453 (8th Cir. 1985) (holding that blood pressure which measures within the range of 140-180/90-115 is considered mild or moderate).

cardiovascular exam showed *normal rhythm*, a murmur in the aortic area and sternal border on the left and *mild systolic timing*; and that Plaintiff had hyperlipedemia. Tr. 405-406. Thus, clinical findings of other doctors are inconsistent with Dr. Kamat's statements regarding Plaintiff's alleged disability.

Fourth, while the opinion of the treating physician should be given great weight, this is true only if the treating physician's opinion is based on sufficient medical data. Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate need to evaluate the record as whole and upholding the ALJ's decision to discount the treating physician's medical-source statement where limitations were never mentioned in numerous treatment records or supported by any explanation); Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) (citing Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data); 20 C.F.R. § 404.1527(d)(3) (providing that more weight will be given to an opinion when a medical source presents relevant evidence, such as medical signs, in support of his or her opinion)). See also Hacker, 459 F.3d at 937 (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment); Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (holding that a treating physician's opinion is given controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence"); Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994). On April 3, 2007, Dr. Kamat reported that Plaintiff's *blood pressure was 120/80*; that Plaintiff's lungs were clear, her "*cardiac [had] regular rate and rhythm*"; her abdomen was "benign"; her *extremities were "within normal limits"*; that her gastroesophageal reflux disease was stable; and that her constipation and irritable bowel syndrome

were stable. This April 2007 visit is the only time Dr. Kamat saw Plaintiff during the relevant period, other than perhaps on the date he completed the August 2007 form,[7] and records of this date do not reflect that Plaintiff had any limitations as described by Dr. Kamat on the February 2, 2007 form. Moreover, Dr. Kamat indicated that his opinion on the August 8, 2007 form was supported by an attached report from a physical therapist. In fact, that report contradicts Dr. Kamat's opinion and states that Plaintiff had "no problem sitting." Additionally the physical therapist reported that Plaintiff could bend, squat, and reach above shoulder level occasionally, "without complications"; that Plaintiff's "positional tolerance [] *sitting and standing [was] greater than 2 hours*"; that her grip testing was 58 pounds on the right and 45 pounds on the left; and that her range of motion in the designated areas was within normal limits, with the exception that Plaintiff had "some complaints of pain with rom" in regard to the lumbar area. Tr. 290.

Fifth, a treating physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). Moreover, a brief, conclusory letter from a treating physician stating that the applicant is disabled is not binding on the Secretary. Ward v. Heckler, 786 F.2d 844, 846 (8th Cir. 1986) (per curiam) ("Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statements were conclusory in nature.").

Sixth, Dr. Kamat saw Plaintiff for abdominal symptoms and shingles prior to her onset date. When he saw Plaintiff during the relevant period, on April 3, 2007, Dr. Kamat reported that he saw

---

[7]     As stated above, the record does not reflect whether Dr. Kamat examined Plaintiff on the date he completed the form.

Plaintiff for "followup of her usual medical problems." His diagnosis on that date included constipation, high cholesterol, heartburn, hot flashes, and hypothyroidism. Tr. 393. Dr. Kamat's checkmarks on the August 2007 forms indicated that her limitations resulted from heart valve issues, a condition for which Dr. Kamat had not treated Plaintiff.

Seventh, the ALJ set forth good and specific reasons for not giving controlling weight to Dr. Kamat's opinion. <u>See</u> <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984) (holding that the ALJ is not bound by conclusory statements of total disability by a treating physician where the ALJ has identified good reason for not accepting the treating physician's opinion, such as its not being supported by any detailed, clinical, or diagnostic evidence).

Eighth, Dr. Kamat opined on the August 8, 2007 forms that Plaintiff did not have "significant disorganization of motor function in two extremities resulting in sustained disturbance or gross and dextrous movement or gait and station"; that Plaintiff could occasionally bend, squat, crawl, climb, and reach above to shoulder level; that she had moderate restrictions in regard to unprotected heights, being around moving machinery, marked changes in temperature and humidity, driving automotive equipment, and exposure to dust, fumes and gases; that she could use her hands and feet for repetitive action; that she could occasionally lift "10-19 lbs"; and that she did not use an assistive device. Tr. 386-89. Therefore, the ALJ's determination that Plaintiff could engage in sedentary work was not entirely inconsistent with Dr. Kamat's opinion. <u>See</u> n. 3. As such, the court finds that the ALJ gave proper weight to Dr. Kamat's opinion and that the ALJ's decision, in this regard, is supported by substantial evidence.

**B.      Plaintiff's Past Relevant Work:**

The original ALJ found that Plaintiff had the RFC for sedentary work; that her RFC permitted her to perform her past relevant work as an office manager; and that, therefore, she was not disabled.

Upon remanding to the ALJ, the Appeals Council directed the ALJ to determine whether Plaintiff's skills are transferrable as her past relevant work in a doctor's office because an office manager was not sedentary, as she performed it. The Appeals Council also said that an office manager job is light work, rather than sedentary work, as it is performed in that national economy; that, therefore, Plaintiff could not perform her past relevant work; and that, on remand, the ALJ should determine whether Plaintiff had transferrable skills. On remand, as discussed above, the ALJ found that Plaintiff was limited to sedentary work; that she could perform her past relevant work as an office manager as that job was performed in the national economy; and that, therefore, she was not disabled.

Plaintiff does not dispute the ALJ's finding that she has the RFC for sedentary work other than to suggest that the ALJ did not give proper weight to the opinion of a treating doctor. The court has found above that the ALJ gave proper weight to Dr. Kamar's opinion. As such, the court further finds that the ALJ's determination that Plaintiff has the RFC for sedentary work is supported by substantial evidence. Plaintiff contends, however, that, to the extent the ALJ found she can perform her past relevant work, the ALJ's decision is not supported by substantial evidence. In support of this argument Plaintiff states that she could not perform her past relevant work as an office manager as she performed it.

The Social Security regulations define "past relevant work" as "work experience [which] ... was done within the last fifteen years, lasted long enough for [the claimant] ... to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a). If the claimant is found to be able to perform the duties of his [or her] past relevant work, then he or she is considered not disabled and therefore ineligible for benefits. Bowen v. City of New York, 476 U.S. 467, 471 (1986); Martin v. Sullivan, 901 F.2d 650, 652 (8th Cir. 1990).

As correctly noted by the vocational expert ("VE") and the ALJ in the matter under consideration, upon determining whether a claimant can perform past relevant work, *it may be considered how that job is performed in the national economy*, rather than how the claimant performed it. Upon conducting this inquiry, an ALJ may use the services of VE, as did the ALJ in the matter under consideration. In this regard, 20 C.F.R. § 404.1560(b) states, in relevant part:

> (2) Determining whether you can do your past relevant work. We will ask you for information about work you have done in the past. We may also ask other people who know about your work. (See § 404.1565(b).) We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it *or as generally performed in the national economy*. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.
>
> (3) If you can do your past relevant work. If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy. ...

(emphasis added).

Upon remand, the VE testified that work as an office manager is sedentary, not light. The VE cited specific evidence from the Dictionary Of Occupational Titles ("DOT") which supported his testimony. See 20 C.F.R. § 404.1566(d)(1) (taking administrative notice of the DOT). Significantly, Plaintiff described her job as an office manager as requiring her to handle payroll, insurance, contracts, billing, purchasing, and scheduling. Tr. 235, 241. The DOT describes an office manager position as

sedentary and states that such a person will oversee an office's payroll, bookkeeping, records, clerical services, and budget, and that this person may hire, train, and supervise clerical staff. See DOT 169.167-034. To the extent Plaintiff's job as an office manager required her to lift small children and clean the office, these tasks are not typically required of office managers and are not included in the DOT. Tr. 59-61. While Plaintiff's RFC does not permit her to perform an office manager position as she performed it, substantial evidence supports the ALJ's determination that her RFC permits her to perform it as it is typically performed in the national economy. See Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990).

Additionally, Social Security Ruling ("SSR") 82-61 provides that an ALJ may find that a claimant can return to her past relevant work even if she worked in a specific job that was more difficult. In particular SSR82-61 at *2 states:

> A former job performed [] by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

See also Barnett v. Barnhart, 362 F.3d 1020, 2023 n.3 (8th Cir. 2004) (holding that the ALJ did not err in finding a claimant not disabled where she could not perform specific duties required by her prior employment); Evans v Shalala, 21 F.3d 832, 834 (8th Cir. 1994) ("[E]ven though Evans cannot perform the actual demands of his particular past relevant work, if the ALJ finds he can carry out his job as performed generally within the national economy, he is not disabled under the regulations."). Significantly, the Policy Statement of SSR 82-61 at *2 states that a claimant is not disabled when her

RFC permits her to perform "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy."

Moreover, Plaintiff's job as an office manager was "composite," in that she took on several additional duties characteristic of harder jobs. Where a job is composite, an ALJ may find that a claimant can perform past relevant work where she can perform the central aspect of that job. See Black v. Apfel, 143 F.3d 383, 387 (8th Cir. 1998) (holding that, where an claimant's past relevant work as was a receptionist/inventory clerk, she was not disabled because her RFC permitted her to perform the functions of a receptionist). See also Klawinski v. Apfel, 2010 WL 3069718 at *2 (11th Cir., Aug. 6, 2010) (holding that the claimant, a secretary, who performed extra duties, including carrying heavy parts to job sites, could perform her past relevant work as a secretary as that job was performed in the national economy).

Because Plaintiff's RFC permits her to work as an office manager, as that position is performed in the national economy, the ALJ correctly found that Plaintiff is not disabled. See Wagner v. Astrue, 449 F.3d 842, 853 (8th Cir. 2007); Lowe v. Apfel, 226 F.3d 969, 973 (8th Cir. 2000). Under such circumstances, the ALJ was not required to continue to the fifth step of the sequential analysis to determine whether there was other work which Plaintiff could perform.[8] The court finds, therefore,

---

[8]     20 C.F.R. § 1520 states, in relevant part:

(e) When your impairment(s) does not meet or equal a listed impairment. If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record, as explained in § 404.1545. (See paragraph (g)(2) of this section and § 404.1562 for an exception to this rule.) We use our residual functional capacity assessment at the fourth step of the sequential evaluation process to determine if you can do your past relevant work (paragraph (f) of this section) and at the fifth step of the sequential evaluation process (if the evaluation proceeds to this step) to determine if you can adjust to other work (paragraph (g) of this section).

that the ALJ's decision that Plaintiff can perform her past relevant work as an office manager as it is performed in the national economy and that she is not disabled is supported by substantial evidence. The court further finds that the ALJ's decision is consistent with the requirements of the Regulations.[9]

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and in her Brief in Support of Complaint is **DENIED**. Docs. 1, 13

**IT IS FURTHER ORDERED** that a Judgment incorporating this Memorandum Opinion shall issue this same date.

---

(f) Your impairment(s) must prevent you from doing your past relevant work. If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment, which we made under paragraph (e) of this section, with the physical and mental demands of your past relevant work. (See § 404.1560(b).) If you can still do this kind of work, we will find that you are not disabled.

[9]      The court notes that the VE did testify that Plaintiff has transferrable skills. Tr. 61-62. Where a hypothetical question precisely sets forth all of the claimant's physical and mental impairments, a vocational expert's testimony constitutes substantial evidence supporting the ALJ's decision. Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990). As such, the court notes that substantial evidence supports a finding, at Step 5, that Plaintiff is not disabled.

Additionally, to the extent the Appeals Council's remand was not consistent with the Regulations, the Appeals Council denied Plaintiff's request for review of the second ALJ's decision.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this <u>6th</u> day of July, 2011.